IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ARGOS USA LLC,                          *
                                        *
        Plaintiff,                      *
                                        *
    v.                                  *        1:18-CV-02797-ELR
                                        *
CHRISTOPHER YOUNG and                   *
SOUTHEAST READY MIX, LLC,               *
                                        *
        Defendants.                     *
                                        *
                              _____

                               **ORDER**
                              _____

Presently before the Court is Plaintiff Argos USA LLC's Motion for Leave to Amend Complaint. [Doc. 135].[1]

As filed, Argos's Complaint asserted claims for trade secret misappropriation and conversion (Counts 1–3, 8) against Defendant Christopher Young and former Defendant Southeast Ready Mix, LLC ("SERM") and additional misappropriation–related claims against Young (Counts 4–7, 9). See Compl. [Doc. 1]. The Court dismissed all four of Argos's claims against SERM pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and, similarly, dismissed six

---

[1] Argos appends its proposed First Amended Complaint to the Motion. [Doc. 135-6].

of the nine claims against Young (i.e., Counts 3, 5, 6–8, 9). [Doc. 34]. Argos seeks to amend its Complaint to reassert the dismissed claim, [see Doc. 135-6], arguing that discovery has revealed that Young misappropriated Argos's trade secrets for SERM and that "SERM's owners and employees knowingly benefitted from Young's us[e] and rel[iance] on Argos's confidential information to secure work from customers," [Doc. 135 at 6, 8]. Argos contends that the Court should freely grant leave to amend under Rule 15 because Argos diligently pursued discovery and quickly moved for amendment when the new evidence came to light. [Doc. 135 at 9].

In this nearly eight-year-old case, the Parties have enjoyed prolonged discovery. Following extensions of time and stays, [see Docs. 36, 41, 45], the Court allowed discovery to proceed on January 28, 2020, [Doc. 51]. At the request of the U.S. Department of Justice ("DOJ"), as Intervenor, the Court limited discovery in certain respects. [Docs. 51, 61–62]. Specifically, the Court disallowed depositions, requests for admission, and the issuance of or response to interrogatories or requests for production relating to any Party's or witness' communications (1) with the DOJ in connection with the grand jury investigation or (2) with the grand jury. [Docs. 51, 61, 62]. Subject to the Court-ordered limitation, the Parties nevertheless remained

engaged in discovery until the Court administratively closed the case on March 18, 2021, pending the resolution of the related criminal matter.[2] [Doc. 94].

The Court reopened the case on November 5, 2024, [Doc. 103], and on November 20, 2024, revised its Scheduling Order to allow for, among other things, six additional months of fact discovery, [Doc. 105-1].[3] The Court did not impose any limitations on this recommenced discovery. [See id.] Thereafter, at the Parties' request, the Court repeatedly extended discovery, such that fact discovery ultimately closed on January 26, 2026, 14 months after it recommenced. [Docs. 107; 115; 130 at 4]. Six days before fact discovery closed, Argos filed the instant Motion.

Argos maintains that it "promptly and diligently pursued discovery from Young" after the case reopened. [Doc. 135 at 3]. For example, Argos points to the fact that in December 2024, its counsel twice emailed Young's counsel to request that Young supplement his discovery responses and produce relevant documents. [Doc. 135-1 Ex. A at 15–16]. But when Young's counsel failed to respond, Argos's counsel waited three months, until March 27, 2025, before following up. [Id. at 14–15]. Thereafter, in mid-April 2025, Argos's and Young's counsel apparently conferred regarding Argos's discovery requests, [id. at 11–120], and Young's counsel represented that Young would produce documents by May 30, 2025, [id.

---

[2] The Court refers to the period before the administrative closure as Phase 1 of the case.

[3] The Court refers to the period after the case's reopening as Phase II of the case.

at 8–9]. But when Young did not make the promised document production, Argos's counsel waited more than five weeks before inquiring about the missing production and requesting that Young provide a "production schedule" by July 15, 2025. [Doc. 135-1 at 6–7]. Although Young's counsel agreed to provide Young's production schedule by the date requested, [id. at 3–4], counsel did not follow through. While this caused Argos's counsel to inquire about the production schedule on July 21, 2025, [id. at 2], Argos's and Young's counsel did not confer about Young's discovery responses and document production until September 9, 2025, nearly two months after Young's production schedule was due. [See Doc. 135-2]. At that time, Young's counsel proposed to produce documents on September 24, 2025. [Id.] On finding that that the September 24 production did not include "forensic logs from Young's SRM computer or other interrogatory supplements," on September 25, 2025, Argos's counsel simply requested an update as to those items. [Doc. 135-3 at 7]. Young's counsel maintained that the Young's device was being shipped to a vendor to allow for the capture of the forensic logs. [Id. at 6]. Two months after his September 24 production, Young still had not produced the forensic logs. Finally, on November 24, 2025, Argos informed Young that it intended to raise the discovery dispute with the Court. [Doc. 135-4]. Shortly thereafter, on December 8, 2025, Young produced the forensic logs and, on December 19, 2026, produced additional files that Argos identified. [Doc. 153 at 6].

4

Argos's forensic expert, David Greetham, analyzed the forensic activity logs that Young produced. Decl. of David Greetham ("Greetham Decl.") ¶¶ 3–4 [Doc. 135-5]. He concluded that the same three external storage devices ("USB devices") had been connected to Young's Argos computer and to Young's laptop and that several Argos files were accessed on Young's laptop, likely via connected USB devices. Id. ¶¶ 4–6, 8–9 [Doc. 135-5].

Following Mr. Greetham's analysis, Argos moved to amend the Complaint. According to Argos, the forensic analysis shows that "Young (i) accessed Argos-related files throughout his tenure as President of SERM and on his SERM Device; and (ii) connected the same external storage devices to both his Argos and SERM computer," which "further evidence[es] Young's misappropriation [of Argos's trade secrets] for SERM." [Doc. 135 at 6]. Argos also contends that additional documents and emails show that SERM acquired and used Argos's trade secrets through Young. [Id. at 8]. For example, Argos claims, "SERM's owners confirmed that, after Young joined SERM, they learned that Young had the stolen recordings and documents from Argos" and that emails and documents show that SERM knowingly benefited from Young's use of Argos's information to secure customers. [Id.] Argos argues that this newly acquired "forensic and documentary evidence showing that SERM acquired, used, and benefited from Argos's trade

secrets and confidential information" provides it with a "concrete, plausible basis to reassert trade secret misappropriation against SERM." [Id. at 13].

Under the circumstances presented here, the Court declines Argos's request to amend its Complaint. Argos focuses on Rule 15(a)'s liberal standard for amendment. But because Argos filed its Motion after the deadline for amending pleadings (as set forth in the Joint Preliminary Report and Discovery Plan, [Doc. 57 § 6(b)], and adopted by the Court's Scheduling Order, [Doc. 61]), Rule 16(b)'s standard for altering the schedule applies. Sosa v. Airprint Sys., Inc., 133 F.3d 1417, 1418 n.2 (11th Cir. 1998) ("[W]hen a motion to amend is filed after a scheduling order deadline, Rule 16 is the proper guide for determining whether a party's delay may be excused."). In accordance with Rule 16(e), a scheduling order "control[s] the subsequent course of the action unless modified by a subsequent order" and, under Rule 16(b), a party must show "good cause" to support its modification. "This good cause standard precludes modification unless the schedule cannot "be met despite the diligence of the party seeking the extension."[4] Sosa, 133 F.3d at 1418. Thus, "because [Argos's] motion to amend was filed after the [S]cheduling [O]rder's

---

[4] Although the Court has modified discovery, in terms of scope and timeline, [e.g., Docs. 62, 79, 84, 87, 107, 115, 130], it has not modified the deadline for amendments to pleadings incorporated in its initial Scheduling Order. Accordingly, Argos had until 30 days after the filing of the Joint Preliminary Report and Discovery Plan to amend the Complaint without necessitating a modification of the Scheduling Order. [Doc. 57 § 6(b)].

deadline, [Argos] must first demonstrate good cause under Rule 16(b) before [the court] . . . consider[s] whether amendment is proper under Rule 15(a)." Id. at 1419.

Argos fails to show that it acted with diligence and, thus, cannot establish the good cause necessary to modify the Scheduling Order to allow its out-of-time amendment of the Complaint. Although Argos maintains that it diligently pursued discovery after the Court reopened the case on November 5, 2024, the record fails to establish Argos's diligence in obtaining the discovery at issue.

First, Argos does not identify its efforts to obtain the discovery at issue during Phase I of the case. Of course, during Phase I, discovery proceeded under Court-imposed limitations. But, although limited in certain respects, discovery nevertheless was open for at least ten months before the Court administratively closed the case.[5] Argos does not argue that the discovery limitations in place during Phase I foreclosed it from obtaining the discovery at issue, and it offers no explanation of its efforts to obtain that discovery during the discovery period in Phase I. Rather, casting the discovery limitations that the Court imposed during Phase I as a "partial stay," [Doc. 135 at 2–3], Argos generally argues that "it had no

---

[5] On January 28, 2020, the Court allowed discovery to proceed subject to the limitations requested by the DOJ. [Doc. 51]. The subsequent Scheduling Order assigned the case to an eight-month discovery track, commencing on May 18, 2020. [Doc. 61]. Thus, even if discovery did not commence until May 18, 2020, with a subsequent extension of time, [Doc. 87], the Parties remained engaged in discovery for 10 months before the Court administratively closed the case on March 18, 2021.

obligation to amend while the stay was in place." [Id. at 10]. Although Argos had no obligation to seek an amendment during the more than 3.5 years that this case remained administratively closed, it was required to diligently pursue discovery outside of the Court-ordered limitations during the discovery period of Phase I. Argos fails to show this diligence.

Second, even discounting the discovery period in Phase I, Argos fails to show that it acted diligently to acquire the discovery at issue in Phase II. For example, although Argos sought discovery from Young soon after the Court reopened this case, counsel then waited three months to follow up on Young's counsel's lack of response. Then, after Young failed to produce documents by the promised date in May 2025, Argos's counsel waited five weeks to follow up and, rather than setting a firm production deadline, simply requested that Young's counsel provide an anticipated production schedule. Even after Young's counsel again failed to meet an agreed-to deadline, beyond inquiring about the missed deadline, Argos's counsel took no action, much less any urgent action, to confer with Young's counsel over the repeated missed deadlines. Argos's counsel then allowed nearly two months to elapse before conferring with Young's counsel on September 24, 2025, and allowed another two months to elapse before informing Young's counsel that Argo intended

to seek intervention from the Court.[6] While Young was undoubtedly dilatory in his document production, the record shows that Argos also failed to act promptly or to hold Young to account for missed deadlines. On this course of conduct, the Court is not persuaded that Argos acted with diligence to acquire the discovery at issue.

Third, although Argos claims that emails and documents, apart from the computer forensic logs, purportedly show that SERM acquired Argos's trade secrets through Young and knowingly benefited from the use of the trade secrets, it fails to indicate when it acquired this information and to show that it acted with diligence in acquiring the information and in seeking to amend its Complaint after acquisition.[7] In sum, Argos has failed to establish the necessary diligence to justify an amendment of the Scheduling Order's deadline for amending pleadings. And this failure dooms Argos's Motion for Leave to Amend Compliant. Sosa, 133 F.3d at 1418 (noting that the "good cause" inquiry under Rule 16(b) ends if the movant was not diligent). In the absence of good cause for modifying the Scheduling Order, the Court does not inquire into whether leave to amend is appropriate under rule 15(a)(2).

---

[6] Young produced the forensic logs shortly after Argos signaled its readiness to escalate the issue.

[7] For example, in its reply brief, Argos identifies an email Young sent to SERM's owners on July 20, 2017, that included Argos's confidential concrete mix-design for an Argos customer who moved its business to SERM but does not indicate when it acquired this information and its diligence thereafter in seeking to amend the Complaint to reassert claims against SERM for its allege acquisition and use of Argos's trade secrets. [Doc. 137 at 6].

For the above-stated reasons, the Court **DENIES** Plaintiff's Motion for Leave to Amend Complaint. [Doc. 135].

**SO ORDERED**, this 30th day of April, 2026.

_____
Eleanor L. Ross
United States District Judge
Northern District of Georgia